In re Independent Counsel
Kenneth W. STARR.

No. LR–M–97–91.

United States District Court,
E.D. Arkansas,
Western Division.

Oct. 2, 1997.

*ORDER*

No. LR-M-97-91.

United States District Court,
E.D. Arkansas,
Western Division.

Oct. 2, 1997.

---

## MEMORANDUM AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

Pending before this Court are second and third letter-complaints from Francis T. Mandanici, a Connecticut lawyer, alleging various improprieties on the part of Independent Counsel Kenneth W. Starr. The second letter-complaint, which is dated March 11, 1997 ("Mandanici II"), is a renewed request by Mr. Mandanici that the district court take disciplinary action against Mr. Starr for alleged violations of ethical rules concerning conflicts of interest involving Mr. Starr's law firm and the Resolution Trust Corporation ("RTC") and Mr. Starr's future position and salary at Pepperdine University. Mr. Starr has filed a motion to dismiss Mandanici II following a request from this Court that he brief the issue of this Court's jurisdiction to proceed in this matter. The third letter-complaint, which is dated June 19, 1997 ("Mandanici III"), concerns Mr. Starr's alleged violations of rules prohibiting grand jury leaks and prejudicial public statements with respect to an article that appeared in the June 1, 1997, edition of the New York Times Magazine. The Court has carefully considered the matter and concludes that both letter-complaints (Mandanici II and

Mandanici III) should be and hereby are dismissed.

### I.

■ For purposes of addressing Mr. Mandanici's allegations, the Court will assume that it has jurisdiction over ethics claims involving the Independent Counsel [1] and that Mr. Mandanici has standing under our Model Rules to pursue his claim. The Court notes, however, that a majority of the judges in the Eastern District of Arkansas have concluded that the determination of whether to open an investigation of an attorney based on allegations of misconduct is not a ministerial act mandated by our rules but is a matter of discretion.[2] In this regard, the Court agrees with Judge G. Thomas Eisele's observations that in making such a determination, "[t]he circumstances of each situation before the Court should guide the enforcement of those rules," Memorandum Opinion and Order of May 30, 1997, at 9–10 (citations omitted), and that if a judge became aware of possible misconduct by an attorney practicing before him or her, the judge would not automatically and immediately refer the possible misconduct to an outside individual or committee but, rather, would proceed informally to assess the situation. *Id.* at 10–11. The Court has assessed the situation presented by Mr. Mandanici's allegations and will address each complaint in turn.

### A.

Mandanici II, as previously noted, is a renewed request by Mr. Mandanici that the district court take disciplinary action against Mr. Starr for alleged violations of ethical rules *concerning conflicts of interest involving* Mr. Starr's law firm and the RTC and Mr. Starr's future position and salary at Pepperdine University. For the reasons that follow, the Court concludes that Mr. Starr's motion to dismiss Mandanici II should be and hereby is granted.

---

**1.** Mr. Starr does not dispute this Court's authority to sanction an Independent Counsel or his staff for any transgressions that may have been committed where the anticipated remedy would be something less than disqualification. *See* Mot. to Dismiss and Supporting Mem., at 7 n. 5.

**2.** Mod.Fed.R.Disc.Enf. V(A) provides that "[w]hen misconduct or allegations of misconduct which, if substantiated, would warrant discipline

on the part of the attorney admitted to practice before this Court shall come to the attention of a Judge of this Court, whether by complaint or otherwise, and the applicable procedure is not otherwise mandated by these Rules, the Judge shall refer the matter to counsel for investigation and the prosecution of a formal disciplinary proceeding or the formulation of such other recommendation as may be appropriate."

### 1.

■ No one who has objectively considered the matter seriously disputes that Mr. Mandanici is on a personal crusade to discredit the Independent Counsel. As noted by Judge Eisele, "Mr. Mandanici's vendetta against conservative forces and his objections to Mr. Starr's involvement in the Whitewater investigation are many and long standing," and his "animus is obvious." Op. at 2. It is the opinion of this Court that a complainant's obvious bias and animus is a factor—in this case, a strong one—to be considered by a Court in the decision of whether to exercise its discretion in proceeding with a complaint alleging misconduct. While this Court will not hesitate to sanction any attorney or prosecutor, including an Independent Counsel, who engages in specific misconduct before this Court, this Court is unaware that Mr. Starr has ever acted in an improper or unethical manner in the matters over which this Court has presided (of which there have been several). In the absence of specific evidence of misconduct on the part of Mr. Starr in proceedings before this Court, and considering the motivation behind Mr. Mandanici's allegations, this Court declines the opportunity to provide Mr. Mandanici a forum for the pursuit of his "vendetta."

### 2.

In concluding that Mr. Mandanici's allegations warrant no action, the Court is giving weight to the fact that the Department of Justice ("DOJ") has itself reviewed the precise allegations set forth in Mandanici II and determined that there is no basis for action by that office. True, the Attorney General has informed this Court that the DOJ's control over Independent Counsels is "generally" restricted to exercising the Attorney General's power of removal in appropriate circumstances and that she takes "no position on whether the Court should exercise its discretionary authority to review [the Mandanici allegations] or to take any action if it does so." *See* Response by the Attorney General to Motion to Dismiss, at 4, 16. *See also* August 19, 1997, Letter of Michael E. Shaheen, Jr. (noting that the decision not to investigate the Pepperdine–Scaife allegation

was based on "the high threshold for triggering an investigation where the issue is the use of the Attorney General's removal power under 28 U.S.C. § 596(a)(1)"). Nevertheless, the fact remains that the Attorney General has reviewed Mr. Mandanici's allegations and determined that the RTC matter does not support the proposition that such a conflict substantially impairs Mr. Starr's current ability to carry out the duties of his office and that there is no evidence with respect to the Pepperdine University matter that would suggest Mr. Starr is unable to put aside his personal political views while carrying out his duties as Independent Counsel. *See* February 7, 1997, letter of Michael E. Shaheen, Jr. (noting that the RTC matter "does not support the proposition that such a conflict [with Mr. Starr's law firm and the RTC], if in fact it ever actually existed, substantially impairs Judge Starr's current ability to carry out the duties of his office"); February 24, 1997, letter of Michael E. Shaheen, Jr. (noting with respect to allegations regarding Pepperdine University that the DOJ has "not been presented with any evidence that Mr. Starr is unable to put aside his personal political views while carrying out his duties as Independent Counsel"); May 6, 1997, letter of Michael E. Shaheen, Jr. (informing Mr. Mandanici that materials alleging conflicts of interest by Mr. Starr in connection with the RTC and Pepperdine University "did not provide evidence of misconduct that called for any action by the Department of Justice"). These conclusions speak for themselves (regardless of the standard of review under which they were formulated) and, together with the DOJ's determination that Mr. Mandanici's allegations warrant no action by that office, weigh in favor of this Court likewise declining to act on Mr. Mandanici's allegations.

### B.

In Mandanici III, Mr. Mandanici requests that this Court commence grievance and contempt proceedings against Mr. Starr on the basis of public statements that were allegedly made by Mr. Starr or members of his staff with respect to two individuals—Susan H. McDougal, who is currently in contempt of Court for refusing to answer questions before the grand jury despite being granted immunity, and First Lady Hillary Rodham Clinton. Essentially, Mr. Mandanici claims that Mr. Starr violated grand jury secrecy

rules by commenting on the circumstances surrounding Ms. McDougal's refusal to testify before the grand jury and by commenting on the possible ramifications (including indictment) surrounding the disclosure of notes of Mrs. Clinton's conversations with her lawyers, which at the time of the article in question, was before the Supreme Court of the United States on a petition for writ of certiorari. For the reasons that follow, the Court concludes that Mr. Mandanici's allegations as set forth in Mandanici III warrant no action by this Court.

1.

■ A review of Mr. Mandanici's allegations and the record of both this Court and the Court of Appeals for the Eighth Circuit demonstrate that he seriously misstates the facts in this matter. Contrary to Mr. Mandanici's assertions, it was Ms. McDougal, not Mr. Starr, who disclosed to the public the questions that were asked of her before the grand jury and the circumstances surrounding her refusal to answer such questions. This disclosure came well before the article in the New York Times Magazine that is the subject of this complaint. Indeed, during the contempt hearing that was held on September 4, 1996, Ms. McDougal specifically requested that she be allowed to publicize the questions that were asked of her by members of Mr. Starr's staff during proceedings before the grand jury. Tr. at 9–11, 22, 27. This Court granted Ms. McDougal's request as she was not an officer of the court and such rules do not apply to her (although the Court did restrict her from using court proceedings to publicize the questions asked of her). *Id.* Ms. McDougal's situation was made a matter of public record at her request and there accordingly was no violation of the grand jury secrecy rules on the part of Mr. Starr.

■ Likewise, the matter of Mrs. Clinton's notes of conversations with her attorneys and her invocation of the attorney-client privilege and work product doctrine was first disclosed by the Eighth Circuit Court of Appeals and only then at the request of the White House. *See In re Grand Jury Subpoena Duces Tecum,* 112 F.3d 910, 914 (8th Cir.), *cert. denied sub nom. Office of President v. Office of*

*Independent Counsel,* —— U.S. ——, 117 S.Ct. 2482, 138 L.Ed.2d 991 (1997). Again, this disclosure came well before the article in the New York Times Magazine that is the subject of this complaint. Indeed, the Eighth Circuit itself noted that Mrs. Clinton's "personal liberty is potentially at stake," and that her "interest in the [Independent Counsel's] investigation is, naturally, avoiding prosecution, or else minimizing the consequences if the [Independent Counsel] decides to pursue charges against her." *In re Grand Jury Subpoena Duces Tecum,* 112 F.3d at 922–23. Thus, any acknowledgement in the New York Times Magazine article that Mrs. Clinton is under investigation and faces possible indictment was hardly a profound revelation and did not violate any grand jury secrecy rules.

2.

Aside from Mr. Mandanici's misstatement of facts contained in the record, the Court again notes that Mr. Mandanici is obviously on a personal crusade to discredit the Independent Counsel. *See* Section II(A)(1), *supra.* In this regard, and as previously noted, this Court is unaware that Mr. Starr has ever acted in an improper or unethical manner in the matters over which this Court has presided, and in the absence of specific evidence of misconduct on the part of Mr. Starr in proceedings before this Court, and considering the motivation behind Mr. Mandanici's allegations, this Court declines the opportunity to provide Mr. Mandanici a forum for the pursuit of his "vendetta." *See id.*

II.

One additional matter concerns the unsealing of the record in this matter. Typically, this Court, in accordance with standard practice, would keep sealed any complaint alleging misconduct against an attorney, at least until a decision to investigate the matter had been made. *See* Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law, § 4. In this case, the Court has never reached that point. Nevertheless, the issues in Mandanici II and III have already been placed in the public domain and the confidentiality of these disci-

plinary matters would therefore not be breached by the disclosure of this Memorandum and Order or the record upon which it is based. Accordingly, the Court directs that this Memorandum and Order not be filed under seal and that the record in this matter be unsealed. Chief Judge Stephen M. Reasoner, and Judges George Howard, Jr. and G. Thomas Eisele concur in the non-sealing and unsealing of this matter.

### III.

For the foregoing reasons, the Court concludes that Mr. Mandanici's allegations as set forth in Mandanici II and III do not warrant further action by this Court and that both of these letter-complaints should be and hereby are dismissed. Chief Judge Stephen M. Reasoner and Judge George Howard, Jr. concur in this Court's Memorandum and Order dismissing Mandanici II and III. The Court directs that the record in this matter be unsealed.

EISELE, District Judge, concurring in part and dissenting in part.

Today the Court holds, in part, that it should not look behind or investigate further the appearance of a serious conflict of interests on the part of Independent Counsel Kenneth W. Starr, and it makes that determination without addressing at all the substance of that apparent conflict. For the reasons set forth in my Memorandum Opinion and Order dated May 30, 1997, and for the reasons set forth below, I respectfully dissent from the portion of the majority opinion which analyzes and dismisses that part of Mr. Mandanici's March 11 letter-complaint (hereinafter "Mandanici II") which deals with the alleged Pepperdine–Scaife–Starr conflict of interests. I concur in the majority's decisions to dismiss Mr. Mandanici's June 19 letter-complaint (hereinafter "Mandanici III") and to unseal and open the record in the above-styled matter.

### I. Procedure Used

Before addressing the substance of the matters before the Court, I will explain the reasons for our having addressed Mr. Mandanici's letter-complaints as we have. When an individual files a lawsuit in the United States District Court for the Eastern District of Arkansas, the District Court Clerk randomly assigns that lawsuit to an individual judge on the Court. Most matters come before "the Court" in that manner, and the individual judge to whom the Clerk assigns a matter acts "for the Court" with respect to the issues raised in that proceeding. Certain other matters, mostly of the administrative variety, require the attention of the Court as a whole.

The instant case presented a signally different situation. Mr. Mandanici sent a copy of his March 11, 1997, letter-complaint to each judge on this Court, and his greeting called the attention of the "Judges of the Eastern District." Letter–Complaint dated Mar. 11, 1997, at 1. He presented his allegations to all of the judges *as a Court,* and he specifically asked for action by the Court, not by any individual judge. Moreover, Mr. Mandanici's letter-complaints concern not Mr. Starr's behavior in a particular case before a particular judge but allege conflicts affecting the entire "Whitewater" investigation. Mr. Starr's conduct in that investigation is subject to the concern of this Court because Mr. Starr uses grand juries established by the Court in conducting his investigation. Thus, this matter reached the Court as a whole rather than any individual judge. It is my opinion that all issues must, therefore, be resolved by majority vote of the participating judges.[1]

One might also legitimately ask why the Court filed certain documents under seal in this case and, in general, kept the matter confidential. There is a reasonable view that all disciplinary matters involving judges or lawyers should be made public from the moment complaints are filed. However, I believe that the majority view is that such

---

1. I acknowledge that a legitimate argument can be made to the contrary under our local rules— that is, that each individual judge has the duty and authority to act independently on such complaints. *See* May 30 Mem.Op. at 8–11 (discussing Rule V(A) of the Model Federal Rules of Disciplinary Enforcement).

disciplinary matters should be kept confidential, at least until the disciplinary body satisfies itself as to its jurisdiction and decides to investigate or to enter a show-cause order. Furthermore, in this case, a majority of the judges on the Court has been of the opinion that any decision to open the record would require a majority vote. On balance, I lean in favor of early public disclosure, but I recognize that serious harm can result from the premature disclosure of frivolous or baseless charges. At this point, however, these considerations are no longer of any moment since all four of the presently participating judges have agreed that the entire record in the above-styled matter should now be opened to the public.

## II. Recent Background

My May 30 Memorandum Opinion related the factual and procedural background in this matter up to that date. The purpose of that writing was to present the issue and to explain the Court's decision to request Mr. Starr's input regarding (1) whether the Court has jurisdiction to proceed on Mr. Mandanici's March 11 letter-complaint and (2), if so, whether the Court should, nevertheless, decline to proceed for any reason. The Court presented the May 30 Memorandum Opinion and Order to Mr. Starr and posed those two questions.

On June 9, 1997, Mr. Starr submitted to me an initial response to the May 30 Memorandum Opinion. He stated that the Attorney General had considered the Pepperdine–Scaife issue in a March 25, 1997, response to a letter sent February 24, 1997, by Mr. Mandanici. In the March 25 letter, the Justice Department indicated that it had before it no evidence to indicate that Mr. Starr "is unable to put aside his personal political views while carrying out his duties as Independent Counsel." Letter from Michael E. Shaheen, Jr., dated March 25, 1997, at 2. Mr. Starr suggested that the Court should find dispositive the Justice Department's decision on the Pepperdine–Scaife issue, just as this Court had found such a decision dispositive with regard to the RTC issue. *See* May 30 Mem. Op. at 5 (declining to focus on RTC issue).

The Court then asked the Attorney General to inform us whether the Department of Justice agreed with Mr. Starr's interpretation of Mr. Shaheen's March 25 letter.

By a new letter-complaint dated June 19, 1997, Mr. Mandanici submitted his request for grievance and contempt proceedings against Mr. Starr for his alleged violations of rules prohibiting grand-jury leaks and prejudicial public statements. That submission was Mr. Mandanici's third letter-complaint in this Court.

Mr. Starr filed (1) his Motion for Recusal or, in the Alternative, for a Stay of the District Court Proceeding, and Memorandum in Support Thereof and (2) his Motion to Dismiss and Supporting Memorandum on June 20, 1997. In his Motion for Recusal, Mr. Starr moved pursuant to 28 U.S.C. §§ 144 and 455 and the Code of Judicial Conduct for the recusal of Judges William R. Wilson, Jr., and Henry Woods. In support of his Motion for Recusal, Mr. Starr argued that the resolution of this matter could not constitute a "ministerial act" and that, therefore, Judges Wilson and Woods should recuse to avoid an appearance of impropriety.

In his Motion to Dismiss, Mr. Starr argued that the Court lacks jurisdiction to proceed. Mr. Starr noted the following statutory language from the Ethics in Government Act:

An independent counsel appointed under this chapter may be removed from office, other than by impeachment and conviction, only by the personal action of the Attorney General and only for good cause, physical or mental disability (if not prohibited by law protecting persons from discrimination on the basis of such a disability), or any other condition that substantially impairs the performance of such independent counsel's duties.

28 U.S.C. § 596(a)(1). That language gives to the Attorney General alone the power to *remove* an independent counsel. Mr. Starr argued that the remedy for the alleged conflict at issue would be disqualification. In such a situation, he contended, the remedy would be tantamount to removal, and the Court, therefore, lacks the power to act. Mr. Starr did not contest the Court's power to discipline him with some sanction other than disqualification.

Second, Mr. Starr argued that, even if the Court concluded that it had jurisdiction over the instant matter, the Court should decline to proceed. He noted that a majority of the Court had already concluded that Rule V(A) of the Model Federal Rules of Disciplinary Enforcement does not create a mandatory duty of referral. *See* May 30 Mem. Op. at 8–11. Mr. Starr then pressed five points: (1) the exercise of jurisdiction could flout congressional will, (2) the exercise of jurisdiction could interfere with the functioning of the Office of the Independent Counsel, (3) the Attorney General has reviewed and dismissed the allegations before the Court, (4) the complainant's peripheral and biased interest in the matter should be considered, and (5) referral to outside counsel could not result without the participation of Judges Wilson and Woods, whom Mr. Starr had contended should recuse.

On August 1, 1997, Judges Wilson, Roy, and Woods recused from consideration of the above-styled matter, and their reasoning was set forth in an opinion filed by Judge Wilson.

The Attorney General filed under seal a response to Mr. Starr's Motion to Dismiss on August 20, 1997. In her response, the Attorney General disagreed with Mr. Starr's argument that the Court lacks jurisdiction to proceed on the ethical complaint against him. The Attorney General concluded that Mr. Starr's argument was inconsistent with the inherent powers of the Court and lacked support in the relevant portions of the Ethics in Government Act. *Accord* May 30 Mem. Op. at 11–14. The Attorney General noted the distinction between removal and disqualification in her response: "If the Court were to disqualify an Independent Counsel from all or a substantial portion of the matters assigned to him, the Attorney General would then need to decide whether to exercise *her* authority under Section 596(a)(1) to remove that official because he would be unable to perform his functions." Response by Attorney General to Motion to Dismiss at 15 n. 5 (emphasis in original). Finally, the Attorney General expressly declined to take a position on whether the Court should exercise its

jurisdiction over Mr. Mandanici's second letter-complaint.

By letter dated August 19, 1997, Michael E. Shaheen, Jr., of the Department of Justice's Office of Professional Responsibility responded to my letters of June 11, 1997, and July 20, 1997, regarding the instant matter.[2] Mr. Shaheen reiterated the views provided by the Attorney General's Response to Mr. Starr's Motion to Dismiss, and he answered two questions which I had posed in my letters to him. First, Mr. Shaheen indicated that the Department of Justice did not agree with Mr. Starr's interpretation of Mr. Shaheen's March 25 letter to Mr. Mandanici. Mr. Shaheen wrote as follows:

> As should be clear from the context of our letter to Mr. Mandanici, we were explaining that we would not investigate the Pepperdine–Scaife allegation in view of the high threshold for triggering an investigation where the issue is the use of the Attorney General's removal power under 28 U.S.C. § 596(a)(1). We did not intend to suggest in our letter that we would not investigate the Pepperdine–Scaife allegation if it involved an ordinary Department of Justice attorney instead of an Independent Counsel. To the contrary, because the Attorney General has available a variety of sanctions for a U.S. Attorney, the allegations might present issues that would be appropriately examined for an employee we directly supervise.

Letter from Michael E. Shaheen, Jr., dated August 19, 1997, at 2–3.

Next, Mr. Shaheen addressed the hypothetical posed in my May 30 Memorandum Opinion at page sixteen. The Department of Justice expressed no view on whether the facts in that hypothetical are analogous to the allegations against Mr. Starr. The Department did, however, indicate that, under the facts in the hypothetical, "it is unlikely that we would permit the U.S. Attorney to continue to participate in the investigation...." *Id.* at 3.

I believe that a review of my May 30 Memorandum Opinion and the additional

---

**2.** Copies of all such pertinent communications between the Court and the Attorney General's office are being ordered filed of record to foster a clearer understanding of the issues.

background recounted above shows that the Court has made every effort to determine what authority should appropriately deal with the Pepperdine–Scaife issue put to us in this matter. Our inquiry has been exhaustive, and it appears that, if this Court does not deal with Mr. Starr's alleged conflict, no other court or governmental entity will address that pressing issue at all. Having considered the reasons posed by various courts and by the Attorney General for their not taking up the matter and having considered this Court's role vis-à-vis the Independent Counsel, I have concluded that this Court is an appropriate forum—perhaps *the most* appropriate forum—for dealing with the alleged conflict at issue.

Today, Chief Judge Reasoner and Judge Wright announced their decisions to deny Mr. Mandanici's motion that they recuse, and a majority of the participating judges—Chief Judge Reasoner, Judge Howard, and Judge Wright—declines to consider the merits of the Pepperdine–Scaife–Starr conflict alleged in Mr. Mandanici's March 11 letter-complaint, or "Mandanici II." As a consequence, the Court is granting Mr. Starr's Motion to Dismiss. I dissent from that dismissal. I agree, however, with the majority's decision to dismiss the June 19 letter-complaint, or "Mandanici III," and the majority's decision to unseal the record in the instant matter.

## III. Discussion

### A. March 11 Letter–Complaint (Mandanici II)

I disagree with the decision of the majority to decline to exercise jurisdiction over Mr. Mandanici's March 11 letter-complaint to the extent that the letter-complaint raises the Pepperdine–Scaife issue. I tentatively reached the conclusion that the Court does have jurisdiction over this matter in my May 30 Memorandum Opinion. I am now convinced that that tentative conclusion was, and is, correct. The power to supervise and discipline attorneys practicing before the Court is one of the Court's inherent powers, and there is nothing in the Ethics in Government Act to contradict that assessment. *See* May 30 Mem. Op. at 11–16. The Attorney General agrees. Indeed, I find no authority or persuasive reasoning in disagreement with

our position on the issue of this Court's jurisdiction in this matter. The majority today assumes that the Court has jurisdiction and bases its decision to dismiss on other rationales, which I will discuss below.

A reading of my May 30 Memorandum Opinion shows that, accepting Mr. Mandanici's allegations as true, I have concluded that Mr. Starr is suffering under at least an *appearance* of conflict in his relationships with Pepperdine University, Mr. Scaife, and Mr. Scaife's foundations. My view on that matter is revealed fully at pages seventeen to twenty-three of my May 30 Memorandum Opinion. I am further of the opinion that such a conflict is continuing and unwaivable.

In declining to address the substantive issues put to the Court, the majority avoids having to deal with the analysis I set forth regarding the appearance of conflict. The majority indicates that

> this Court is unaware that Mr. Starr has ever acted in an improper or unethical manner in the matters over which this Court has presided (of which there have been several). In the absence of specific evidence of misconduct on the part of the Independent Counsel in proceedings before this Court, and considering the motivation behind Mr. Mandanici's allegations, this Court declines the opportunity to provide Mr. Mandanici a forum for the pursuit of his "vendetta."

Maj. Op., *supra,* at 1160–1161. My first problem with that conclusion is that there is no need for "specific evidence of misconduct" to establish an *appearance* of conflict. I expressly noted in my May 30 Memorandum Opinion that the Court would need more information in order to determine whether an actual conflict exists. The point, though, as I explained on May 30, is that even the appearance of conflict is prohibited by the Model Rules of Professional Conduct, which this Court has adopted as its own professional code, and by the spirit of the Ethics in Government Act. *See* May 30 Mem. Op. at 8, 20–23. The appearance of a conflict requires further inquiry to determine if that conflict truly exists. The absence of specific evidence of misconduct is not, as the majority

concludes, a sufficient reason for declining to take any action at all.

The majority bolsters this lack of "specific evidence of misconduct" by pointing to Mr. Mandanici's political vendetta and personal grudge against Mr. Starr. It is my opinion that Mr. Mandanici's motivations must be put aside if a fair and objective evaluation of the merit of his allegations is to be made. And there is no way to discover whether the allegations are true without conducting some sort of inquiry. I do not believe that our pursuing the allegations in Mr. Mandanici's second letter-complaint would have provided him a forum in which to carry on his alleged vendetta. In fact, I expressed the view in my May 30 Memorandum Opinion that I do "not consider Mr. Mandanici a party to any action or a person with the ability to submit a motion upon which the Court is duty-bound to act." May 30 Mem. Op. at 7. These allegations are now before the Court, and I perceive no reason to involve Mr. Mandanici at all. If this matter had gone forward, the Court could have employed very flexible, discreet procedures. Indeed, if the appearance-of-conflict allegations against Mr. Starr are without merit—*i.e.*, if no actual conflict exists—the matter could be put to rest quickly if the Court secured the full cooperation of Mr. Starr, Mr. Scaife, Mr. Scaife's foundations, and Pepperdine University. Under that scenario, the process would have resulted in the dismissal of the allegations of an actual conflict of interests, thereby eviscerating even the appearance of a conflict. So, there would have been no need for the sort of adversarial process which might be required if the Court agreed to permit Mr. Mandanici to appear and participate as an interested party. That threat is not real. Mr. Mandanici's interest in this proceeding is no greater than that of any other citizen.

Finally, the majority relies in part upon the Justice Department's decision not to pursue the allegations brought to their attention. Regarding the Pepperdine–Scaife issue, the majority cites Mr. Shaheen's letter stating the Justice Department's conclusion that there is no evidence that Mr. Starr is unable to "put aside his personal political views while carrying out his duties as Independent Counsel." The alleged Pepperdine–Scaife

conflict that I have identified has nothing whatsoever to do with Mr. Starr's *political* views. Rather, it puts Mr. Starr's *personal, financial,* and *career* interests in possible conflict with his duty as independent counsel to exercise his prosecutorial power and discretion fairly and even-handedly. Would there be any incentive to exercise that power and discretion in a manner which might please Mr. Starr's past or future benefactor? That is the central question. The majority's argument simply does not confront the appearance-of-conflict issue identified in my May 30 Memorandum Opinion and, therefore, cannot justify dismissing Mandanici II.

As our correspondence with the Attorney General makes clear, moreover, the Court and the Department of Justice stand in very different shoes vis-à-vis Mr. Starr: the only action that the Attorney General believes that she is empowered to take is removal, and that action comes only after a very high threshold showing is made. This Court has a duty to supervise the attorneys practicing before it that compels it to act in certain situations where the Attorney General should perhaps refrain from acting. While I would have supported declining jurisdiction if the Attorney General had agreed to take up and resolve the issues before the Court, I do not believe that her refusal to investigate has any impact on our duties, particularly where no one has contradicted my May 30 analysis of Mr. Starr's apparent conflict. In my opinion, the Attorney General's refusal to deal with the substance of the Pepperdine–Scaife issue before us makes it even more important that we act.

**B. June 19 Letter–Complaint (Mandanici III)**

Mr. Mandanici's June 19 letter-complaint is based almost exclusively upon an article by Jeffrey Rosen in *The New York Times Magazine* of June 1, 1997. I concur in the majority's dismissal of the June 19, 1997, letter-complaint. I also concur in Parts I.B.1 and II of the majority opinion, but I do not join in Part I.B.2 because, as I noted *supra,* I do not believe that Mr. Mandanici's motives are relevant to our disposition of the matters at hand.

Regarding the June 19 letter-complaint, I have one final point. Certain language in Mr. Rosen's article bears directly upon my views concerning the appearance of conflict arising out of the relationship among Mr. Starr, Mr. Scaife, Mr. Scaife's foundations, and Pepperdine University:

> A year ago, David Davenport, the president of Pepperdine University, asked Starr to consider becoming dean of the law school and also of Pepperdine's School of Public Policy. Davenport and Starr were great admirers of Rex Lee, the Reagan Administration Solicitor General who became president of Brigham Young University while continuing to argue before the Supreme Court. And as Davenport extolled the virtues of what he called "the Rex Lee model," Starr was enchanted.
>
>    \*     \*     \*     \*     \*     \*
>
> On Friday, February 14, Starr told Pepperdine that he would accept both deanships. On Monday, a firestorm of criticism erupted. He flew to Little Rock on Tuesday to consult with his prosecutors and found, to his surprise, near-unanimous sentiment that the investigation would suffer if he left before it was concluded. The 25 lawyers in Little Rock and Washington had become close during their time together; they had too much invested in the investigation to let it fizzle. And it was good for the investigation, they urged Starr, to have someone with the stature of a former judge and Solicitor General at the helm.
>
> As the criticism continued to swell, from the right and the left, Starr kept up his frantic schedule . . . .
>
> *The next day [February 21] Starr's deputies pressed him to explain the relationship between Pepperdine and Richard Scaife, the conservative benefactor who had sponsored advertisements suggesting Vincent Foster had been murdered. Starr replied that he had never met Scaife or talked to him and that Scaife had been critical of his investigation.* Finally, Starr's staff convinced him that he had a moral obligation to the investigation, and Starr concluded that he also had a moral obligation to keep his commitment to Pepperdine. After receiving Pepperdine's assurance that the deanships would be waiting for him whenever the investigation ended, Starr announced he would be remaining as independent counsel.

Rosen, "Kenneth Starr, Trapped," *The New York Times Magazine* (June 1, 1997) at 45–46 (emphasis added). Although it is far from clear, the last quoted paragraph suggests that Mr. Starr's own staff noted the very conflict that I discussed in my May 30 Memorandum Opinion and called upon him for some explanation.[3] That is essentially the same course that I believe that the Court should follow here.

## IV. Conclusion

For the reasons set forth in my May 30 Memorandum Opinion, I believe that Mr. Starr is laboring under the appearance of a serious conflict of interests stemming from the Pepperdine–Scaife allegations. No one has challenged that conclusion. I have considered the majority's reasons for declining to exercise jurisdiction over this matter, and, for the reasons set forth above, I have concluded that those reasons offer insufficient justification for that decision. It is my opinion that the Court has not only the legal authority but also the institutional duty to inquire into the Pepperdine–Scaife issue. I respect the intellectual and professional integrity of every judge on this Court—both those now participating and those who have recused, and I accept the *bona fides* of their opinions. Nevertheless, for the reasons set forth on May 30 and above, I must dissent from the portions of the majority opinion that dispose of the Pepperdine–Scaife issue, principally Part I.A.

---

**3.** If I am right in my surmise, the appearance of conflict that greatly concerns me also concerned Mr. Starr's staff, and he apparently took some steps to reassure them on that point. Of course, Mr. Starr's representations that he has neither met nor talked to Mr. Scaife and the fact that Mr. Scaife has criticized the Whitewater investigation would not suffice to put this matter to rest without much additional information. As I have noted, though, with the cooperation of all concerned, that information could be obtained quickly without any great expenditure of time or money.

I concur in the majority's decision to dismiss the Mandanici III complaint, and I also concur in the majority's decision to unseal the entire record in the above-styled matter. I join Parts I.B.1 and II of the majority's opinion but do not join Part I.B.2 for the reasons set forth above.